J-S16027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :          PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| BRANDON CHRISTOPHER ZINSKY | : |
| | : |
| Appellant | : No. 800 WDA 2025 |

Appeal from the Judgment of Sentence Entered March 11, 2025
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001377-2023

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                          **FILED: JULY 2, 2026**

Brandon Christopher Zinsky appeals from the aggregate judgment of sentence of six and one-half to twenty years in prison for drug-related offenses resulting in the death of Tab Softa ("the victim").  We affirm.

By way of background, on August 24, 2022, the victim met up with his friends Perry Leapline and Charles Swank.  All three were in Leapline's white truck when Leapline called Appellant to purchase heroin.  The victim and his two friends frequently used heroin together.  On the way to Appellant's home, Leapline dropped off the victim and Swank at a local Rite Aid.  Leapline proceeded to Appellant's residence and purchased twenty glassine baggies of heroin, which were labeled with a green "Chocolate Factory" stamp.

Leapline returned to pick up the victim and Swank, and the three drove to the victim's home.  He gave the twenty baggies to Swank, who then handed

them to the victim. The victim returned a few bags each to Swank and Leapline. Upon arrival at the victim's home, Swank snorted a baggie in Leapline's truck that was parked in the driveway. The victim stepped out of the vehicle, snorted a baggie through a straw, and immediately fell to the ground and began to convulse. Leapline and Swank left the victim in the driveway and drove away in the truck. The victim died of a fentanyl overdose. A short while later, a neighbor spotted the victim in the driveway as he drove by and called 911.

Corporal Charles Morrison of the Pennsylvania State Police ("PSP") was dispatched to the scene, where he found the victim lying deceased on the driveway. Near his body the corporal discovered an empty glassine baggie stamped with "Chocolate Factory" in green font and two red straws. In the victim's pants pocket, Corporal Morrison found thirteen more identical baggies containing a white powdery substance. The contents of one of the unopened bags was later tested and confirmed to contain heroin and fentanyl.

PSP Trooper Tyler Shutterly also investigated this matter and spoke to some of the victim's neighbors, one of whom provided home security footage capturing the victim's overdose. The truck that is seen in the video in the victim's driveway was identified as belonging to Leapline. Trooper Shutterly interviewed Leapline, who initially lied about the source of the drugs. Later, once Leapline learned that the victim had died of an overdose, he confessed to obtaining drugs from Appellant.

Trooper Shutterly thereafter interviewed Appellant, who informed the trooper that he had sold twenty bags of heroin to Leapline with a green chocolate factory stamp. Appellant was arrested and charged with drug delivery resulting in death ("DDRD"), possession with intent to deliver ("PWID"), and possession.

The aforementioned facts were borne out at a subsequent jury trial. Leapline agreed to testify for the Commonwealth in exchange for the withdrawal of the charge of DDRD. The jury also watched Appellant's interview and the neighbor's home security footage that captured the victim's overdose.[1] At the conclusion of trial, the jury convicted Appellant of all charges. The court deferred sentencing to obtain a pre-sentence investigation ("PSI") report. At the sentencing hearing, the victim's wife presented an impact statement, and Appellant exercised his right to allocution, maintaining his innocence. The court also considered the arguments of counsel, and ultimately imposed a standard-range sentence of six and one-half to twenty years of imprisonment.

Appellant filed an unsuccessful post-sentence motion challenging the weight of the evidence and the length of his sentence. This timely appeal followed. All requirements of Pa.R.A.P. 1925 have been met. Herein Appellant

---

[1] This Court also reviewed the video evidence.

presents the following three questions for our consideration, which we have reordered for ease of disposition:

> 1. Whether the evidence presented by the Commonwealth was insufficient to support the guilty verdicts?
>
> 2. Whether the jury verdicts to the offenses charged w[ere] against the weight of the evidence?
>
> 3. Whether or not the sentence imposed by the trial court was manifestly unreasonable?

Appellant's brief at 6.

We begin with Appellant's sufficiency claim, for which the following legal tenets guide our analysis:

> Our applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Hill*, 348 A.3d 264, 275–76 (Pa.Super. 2025) (cleaned up).

Appellant generically challenges the sufficiency of the Commonwealth's proof of his offenses, rather than identifying specific elements for which the evidence was lacking.[2]  This typically results in waiver.  *See*, *e.g.*, *Commonwealth v. Roche*, 153 A.3d 1063, 1072-73 (Pa.Super. 2017).  The argument section of Appellant's brief, however, clarifies that he only takes issue with one element of DDRD.  We will therefore address this specific sufficiency challenge.

A person commits the offense of DDRD where:  "(1) he intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance; (2) such act violates [§] 13(a)(14) or (30) of the Drug Act; and (3) another person dies as a result of using the substance."  *Commonwealth v. Scott*, 325 A.3d 844, 850 (Pa.Super. 2024) (cleaned up).

Appellant maintains that "[t]he causal connection between the delivery and the death of [the victim] was insufficient to convict" him.  *See* Appellant's brief at 17.  Since there was no DNA or fingerprints on the bag of heroin that killed the victim, and no other connection between the opened bag found on the victim and the ones Appellant sold to Leapline, he maintains that the "evidence was insufficient to show a nexus between what was delivered by Leapline and what actually caused the death of [the victim]."  *Id*. at 18.

_____

[2] Appellant's Rule 1925(a) statement likewise declared that the evidence was generally insufficient to establish DDRD, PWID, and possession.

This Court has rejected a similar argument in ***Commonwealth v. Storey***, 167 A.3d 750 (Pa.Super. 2017). In that case, the victim overdosed on morphine, which he had procured from his friend. The friend purchased the drugs from Storey, who was convicted of DDRD. On appeal, Storey argued that the evidence was insufficient to sustain his DDRD conviction where he did not deliver the fatal dose to the victim. We affirmed his judgment of sentence, reasoning that: (1) the friend testified that he bought drugs from Storey and provided them to the victim; (2) cell phone data confirmed the friend's testimony; (3) the victim was found with drug paraphernalia, including baggies stamped with the same stamp as the ones that the friend purchased from Storey; and (4) a toxicology report confirmed the victim died of a morphine overdose. ***Id***. at 758. We concluded that, although the friend was the one to buy the fatal drugs from Storey, "but for Storey's illegal sale of drugs, [the victim] would not have died." ***Id***. at 757.

The case *sub judice* is materially indistinguishable from ***Storey***. Here, Leapline testified that he obtained bags of heroin from Appellant and gave them to Swank, who in turn gave them to the victim. The baggies were labeled with a green chocolate factory stamp. Security footage from the victim's neighbor confirmed that the victim stepped out of Leapline's truck onto the driveway, snorted a substance, and overdosed. When officers responded, they found an empty glassine baggie with the green chocolate factory stamp and straws next to the victim, as well as thirteen other identical

baggies in his pants pocket containing a white powdery substance. The powder was tested and confirmed to contain heroin and fentanyl, and the toxicology report revealed that the victim died from a fentanyl overdose. Accordingly, **Storey** directly refutes Appellant's argument that since he did not deliver the fatal dose of heroin directly to the victim, the circumstantial evidence was insufficient to establish the causal connection between the drug sale and the victim's death. This challenge therefore has no merit.

Appellant next assails the weight of the evidence. Our analysis is distinct from that of the trial court, which we have explained thusly:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Sexton**, 222 A.3d 405, 414 (Pa.Super. 2019) (cleaned up). An abuse of discretion will only be found where the record demonstrates "a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Commonwealth v. Jennings**, 351 A.3d 1215, 1242 (Pa.Super. 2026) (cleaned up).

The trial court determined that the jury's verdicts were not so contrary to the evidence so as to shock the court's conscience. **See** Trial Court Opinion,

9/9/25, at 3. It reasoned that the jury was entitled to "great deference in determining the weight of the evidence in trials," and it found Appellant guilty of each of the charges beyond a reasonable doubt. *Id*. After reviewing the evidence presented at trial, the court concluded that Appellant failed to meet the "incredibly high standard" to succeed on a weight challenge. *Id*.

Appellant presents a lengthy argument regarding his weight claim, walking this Court through each fact he believes supports his innocence. *See* Appellant's brief at 7-16. In essence, Appellant asks us to re-weigh the evidence in his favor. That is not our task. We instead review whether the trial court abused its discretion in denying Appellant a new trial. *See Sexton*, 222 A.3d at 414. Based upon the court's analysis, we fail to discern that its decision was based upon bias, impropriety, or an error of law. It was for the jury to determine the credibility of the witnesses and evidence that appeared before it. Appellant's argument is accordingly unavailing.

Appellant's final contention concerns the discretionary aspects of his sentence. A challenge of this type does not entitle an appellant to review as of right, thus before reaching the merits this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Lawrence***, 313 A.3d 265, 284 (Pa.Super. 2024) (cleaned up).

We initially note that although Appellant timely appealed and preserved his challenge in a post-sentence motion, he failed to include a Rule 2119(f) statement in his brief. The Commonwealth, however, has not objected to this omission. We have explained that "when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate." ***Commonwealth v. Robertson***, 874 A.2d 1200, 1211 (Pa.Super. 2005) (cleaned up). Therefore, we seek to ascertain whether a substantial question "is evident from the appellant's brief." ***Id***. (citation omitted).

Appellant asserts that the court imposed a manifestly unreasonable sentence while demonstrating "ill will, partiality, bias[,] and prejudice toward" him. ***See*** Appellant's brief at 19. We have held that "an allegation of bias in sentencing implicates the fundamental norms underlying sentencing" and thus raises a substantial question. ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa.Super. 2011). Having satisfied the above four-part test, we proceed to consider the merits of Appellant's claim with the following precepts in mind.

This Court reviews a challenge to the discretionary aspects of sentencing for an abuse of discretion. ***See***, ***e.g.***, ***Commonwealth v. Aulisio***, 253 A.3d 338, 344 (Pa.Super. 2021). The Sentencing Code requires a court to "follow

the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Relevant factors include "the defendant's prior criminal record, age, personal characteristics[,] and potential for rehabilitation." *Commonwealth v. Lucky*, 229 A.3d 657, 663 (Pa.Super. 2020).

Further, "where the sentencing judge had the benefit of a PSI report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Summers*, 245 A.3d 686, 695 (Pa.Super. 2021) (cleaned up). A standard-range sentence is also presumptively reasonable. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010). Upon review, "this Court cannot reweigh sentencing factors and impose judgment in place of the sentencing court where the lower court was fully aware of all mitigating factors." *Commonwealth v. Lawrence*, 313 A.3d 265, 286 (Pa.Super. 2024) (cleaned up).

Appellant insists that the sentencing court demonstrated bias, partiality, and prejudice against him after the victim's wife gave her impact statement. *See* Appellant's brief at 18-19. He maintains that the court improperly compared Appellant to the victim while looking at the victim's wife, characterizing both the victim and Appellant as addicts, but stating that the

difference between them was that Appellant peddled drugs and killed someone while doing so. *Id*. at 19-20. Appellant asserts that the court failed to credit the statements he made during his allocution, including an admission to suffering from addiction, when imposing the sentence. *Id*. at 20.

A review of the sentencing transcript reveals that the court imposed a standard-range sentence with the benefit of a PSI report. Thus, it both presumptively and manifestly considered the protection of the public, rehabilitative needs of Appellant, and the impact on the victim. *See* N.T. Sentencing, 3/11/25, at 8-10. Merely because the court did not weigh factors favoring Appellant more heavily than he desired does not equate to an abuse of discretion. This Court may not reevaluate the elements that the sentencing court already assessed. *See Lawrence*, 313 A.3d at 286. As we fail to discern that the court was biased against Appellant, his arguments to the contrary are meritless.

Overall, Appellant has failed to demonstrate that the evidence was insufficient to convict him of DDRD, or that the court abused its discretion in denying his motion for a new trial and in imposing his sentence. We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/2/2026